UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| YOLANDA HURST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:14CV1465 HEA |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's request for judicial review under 42 U.S.C. § 405(g) of the final decision of Defendant denying Plaintiff's application supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act), 42 U.S.C. §§ 401-434, 1381-1385 . For the reasons set forth below, the Court will affirm the Commissioner's denial of Plaintiff's applications.

### **Facts and Background**

On May 2, 2013 Plaintiff appeared and testified before Administrative Law Judge Joseph Warzycki. Plaintiff was 44 years old at the time of the hearing. Plaintiff did not complete high school and had past work experience as a housekeeper and factory worker through temporary employment services. She

resides in a single family residence with a male friend. She does the grocery shopping and and household chores such as cleaning and sweeping, making the bed, cooking and doing laundry. She also has a cat and changes the litter box. Plaintiff also is able to walk to and from the car in order to go grocery shopping and other places.

Plaintiff testified that she suffers from pain in her feet and back. As a result she can't stand or walk very long due to the pain. She has callouses on her feet and they throb all the time even through the evening when she is at rest. She testified that she could lift one gallon of milk but two gallons would be too heavy. As to her mental health she testified that she has depression and takes Celexa for it.

The ALJ concluded, based upon the inquiry, and responses, of the Plaintiff, and the documentary and records evidence presented, the testimony of Dr. Mary Jo Kosinski, Dr. Charles Dwight Auvenshine, and the Vocational Expert, Barbara Meyers, that Plaintiff retained the Residual Functional Capacity to perform sedentary work except she is able to lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently; she is able to sit for 6 hours in an 8 hour workday and is able to stand and or walk for 2 hours in an 8-hour workday, for a total of 8 hours in an 8 hour workday; Plaintiff can occasionally climb, balance, stoop, crouch, kneel, and crawl; she should avoid climbing ladders, ropes,

and scaffolds; the Plaintiff should avoid concentrated exposure to unprotected heights; and finally she is limited to simple, repetitive tasks and instructions.

The ALJ found Plaintiff had the severe impairments of borderline intellectual functioning, essential hypertension, and shortness of breath. The ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, 416.920(d), 416.925 and 416.926. The ALJ also concluded that Plaintiff was not capable of performing past relevant work. The ALJ therefore concluded Plaintiff was not disabled.

The Appeals Council denied her request for review on July 14, 2014.The decision of the ALJ is now the final decision for review by this court.

**Statement of Issues**

The issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact by the ALJ are supported by substantial evidence on the record as a whole. Here the Plaintiff asserts the ALJ improperly found that Plaintiff's mental impairments did not meet or equal listing 12.05

**Standard For Determining Disability**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir.2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); see also *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir.2011) (discussing the five-step process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I); *McCoy*, 648 F.3d at 611. At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant

does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009) (citing 20 C.F.R. § 404.1545 (a)(1)); see also 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a) (4) (iv), 404.1520(f), 416.920(a) (4) (iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. Id... At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to

other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.; Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir.2012).

**RFC**

A claimant's Residual Functional Capacity (RFC) is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p. An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole, including: the objective medical evidence and medical opinion evidence; the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and

medical treatment; and the claimant's self-imposed restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984); 20 C.F.R. § 404.1529; SSR 96–7p.

A claimant's subjective complaints may not be disregarded solely because the objective medical evidence does not fully support them. The absence of objective medical evidence is just one factor to be considered in evaluating the claimant's credibility and complaints. The ALJ must fully consider all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir.2001) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir.2001)). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. See *Lauer*, 245 F.3d at 704

(some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F.3d 687, 697 (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir.2006).

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005). "It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence." Id. The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ need only acknowledge and consider those factors. *Id*. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir.1988). The burden of persuasion to prove disability and demonstrate RFC remains on the claimant. *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).

### ALJ Decision

The ALJ here utilized the five-step analysis as required in these cases. The ALJ determined at Step One that Plaintiff had not engaged in substantial gainful

activity during the period from the alleged onset date of October 7, 2011. The ALJ found at Step Two that Plaintiff had the severe impairments borderline intellectual functioning; essential hypertension; and shortness of breath.

At Step Three, the ALJ found that Plaintiff did not suffer from an impairment or combination of impairments that meets or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, Part A (416.920(d), 416.925 and 416.926).

As required, prior to Step Four, the ALJ determined the Residual Functional Capacity of Plaintiff to perform sedentary work as defined in 20 CFR 04.1567(c) and 416.967(a) except lifting, carrying, pushing, pulling no more than 10 pounds occasionally and less than 10 pounds frequently; sitting for 6 hours in an 8-hour workday and able to stand and or walk for 2 hours in an 8-hour workday, for a total of 8 hours in an 8-hour workday; the Plaintiff can occasionally climb, balance, stoop, crouch, kneel, and crawl; should avoid climbing ladders, ropes, and scaffolds; should avoid concentrated exposure to unprotected heights; and she is limited to simple, repetitive tasks and instructions.

At Step Four it was the finding of the ALJ that Plaintiff was not capable of performing past relevant work.

Step Five the ALJ concluded that considering the Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in

significant numbers in the national economy that Plaintiff can perform. The ALJ, therefore, found Plaintiff not disabled, and denied the benefits sought in the Application.

## Judicial Review Standard

The Court's role in reviewing the Commissioner's decision is to determine whether the decision "'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir.2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir.2008)). "Substantial evidence is 'less than preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir.2012) (quoting *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir.2009)). In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Id*. However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" Id. (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir.2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's

findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir.2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir.2005)).

Courts should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact finder could have reached. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir.2006). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

**Discussion**

A. Did the ALJ properly find that Plaintiff's mental impairments did not meet or equal listing 12.05?

The essence of Plaintiff's position is that the ALJ erred in determining that her mental impairments did not meet the listing for mental retardation, which was the terminology used in the framework of application at the time of the ALJ ruling. Review of the transcript, record evidence, and decision of the ALJ yields a conclusion wholly contrary to Plaintiff's position. The ALJ found that the severe impairments of borderline intellectual functioning, high blood pressure, and shortness of breath applicable to the Plaintiff did not meet or equal any of the criteria for any listed impairment, particularly mental retardation (listing 12.05).

Plaintiff must meet one of four severity prongs and the diagnostic description of mental retardation in listing 12.05 in order to establish disabling mental retardation; *Maresh v. Barnhart,* 438 F. 3d 897, 899 (8th Cir. 2006). More specifically Plaintiff must establish (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning, (2) an onset of the impairment before age 22, (3) a valid IQ score between 60 and 70, and (4) an additional sever impairment. 20 C.F.R. pt. 404, subpt. P, app.1, § 12.05; *Bestv. Astrue,* No. 2:12-CV-7LMB, 213 WL 1163464 at *12 (E.D.Mo. Mar. 20, 2013).

Here the ALJ specifically found that Plaintiff had a full scale IQ score in December of 2011. That score was reflected as 70. The psychologist who administered the test noted this was reflective of borderline intellectual functioning rather than mental retardation. The psychologist, Bruner, observed in her evaluation that "there does not appear to be any significant psychological symptomology which would preclude obtaining or maintaining employment". As such the ALJ reasonably concluded that the IQ score was not valid as a diagnosis of mental retardation. The ALJ's finding that a claimant did not establish the required deficits in adaptive functioning was supported by the fact that a psychologist diagnosed borderline intellectual functioning instead of mental retardation. *See, Cheatum v. Astrue,* 388 F. App'x 574, 577 (8th Cir. 2010).

The ALJ clearly considered all the medical opinion, evidence in the record in evaluating Plaintiff's intellectual functioning. It is incumbent upon the ALJ to consider the opinion evidence together with the rest of the relevant evidence in determining disability. Furthermore, it is up to the ALJ to determine the weight each opinion is due. *See, Finch v. Astrue,* 547 F. 3d 933, 936 (8th Cir. 2008). Plaintiff must establish deficits in adaptive functioning which is sufficient to meet the diagnostic description of mental retardation.

At the hearing, The ALJ considered the opinion of medical expert Dr. Auvenshire, Ph.D. Upon review of the records and under examination he concluded that Plaintiff's intellectual deficits did not rise to the level of mental retardation as defined in listing 12.05. Dr. Auvenshire was able to review the entire record to assist in developing his opinion. Great weight was correctly given to his opinion. The opinion was consistent with other evidence in the record and he properly considered Plaintiff's prior work history in assessing her ability or inability to function in a work setting. The fact that Plaintiff worked successfully with her present level of intellectual functioning, coupled with the absence of evidence of significant deterioration in her intellectual functioning demonstrate the impairments are not disabling in the present. *Goff v. Barnhart,* 421 F. 3d 785, 792-93 (8th Cir. 2005). In addition, in a report filed by Plaintiff she stated she stopped working in July of 2003 due to a lack of jobs, not as a result of any mental

impairments. She also testified that she did not stop searching for jobs due to mental impairment, but due to difficulty standing.

The ALJ also considered the opinion of Marsha Toll, Psy. D. Dr. Toll reviewed the record in December of 2011and concluded the medical evidence demonstrated that Plaintiff could perform simple work-related tasks. As a state agency consultant it was appropriate to assign great weight to her testimony and opinions.

ALJ Warzycki found the opinion testimony of Toll to be consistent with the medical evidence as a whole. The record demonstrates that the ALJ was correct in placing great weight in the opinion of Toll. Dr. Toll was familiar with agency disability programs and the opinion was clearly consistent with the medical evidence. As such the ALJ acted reasonably in evaluating and relying upon the testimony of Dr. Toll in light of the other consistent evidence in the record. Substantial evidence therefore supports the finding that Plaintiff did not meet or equal the requirement for mental retardation under 12.05.

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. The decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is affirmed.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 1st day of September, 2015.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE